# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AIDA Y. SHAAT,                                        CIVIL ACTION

           Plaintiff                          No. 06-5625

   v.

EVANGELIA A. KLAPAKIS,

           Defendant

## OPINION

Pollak, J.                                        September 21, 2007

     Plaintiff Aida Shaat brings this action seeking a writ of mandamus to compel a decision by the U.S. Citizenship and Immigration Services ("CIS" or "the agency") on her application for naturalization.  Before the court is a motion to dismiss the complaint for lack of subject matter jurisdiction filed by the defendant ("the government").[1]  For the reasons stated below, the court will deny the motion.

## I. Background

     According to her complaint, Shaat is a native and citizen of Jordan and a lawful

---

[1] The complaint's caption identifies defendant Klapakis as Acting Director of the CIS district that includes Pennsylvania.  The government's memorandum in support of its motion to dismiss states that "[t]he District Director of the USCIS's District No. 5, which includes Philadelphia PA, is Donald Monica."  Docket No. 4 at 1 n.1.

permanent resident of the United States.  *See* Complaint ¶¶ 9-10.  On May 24, 2005, she

filed an application for naturalization.  Complaint ¶ 11.  Again according to her

complaint, Shaat "has complied with all the requirements of aliens seeking

naturalization."  Complaint ¶ 18.

On March 16, 2006, Shaat's counsel contacted CIS to inquire about her

application.  On April 28, 2006, she received notice of an initial interview with CIS to

take place on June 1, 2006.  *See* Complaint ¶ 12.  However, one month later, CIS

cancelled her scheduled interview, "pending a final background check."  *See* Complaint ¶

13 & exh. B.  On August 1, 2006, she received a letter informing her that "the processing

of her case had been delayed due to a background investigation."  Complaint ¶ 15 & exh.

D.  Shaat's complaint states that she "is aware that Defendant has the ability to expedite

the FBI name check but restricts these requests to certain cases such as when the alien is

about to become ineligible due to age[,] the applicant files a writ of mandamus lawsuit[,]

or other humanitarian factors."  Complaint ¶ 16.

Shaat filed her complaint on December 26, 2006, seeking a writ of mandamus to

compel the defendant to take action on her application.  *See* Complaint ¶ 1.  The

complaint alleges that the defendant has unreasonably delayed processing the application.

*See* Complaint ¶¶ 5, 19-23.  Shaat's complaint does not request that the court compel

approval of her application; rather, the complaint requests only that the court compel the

defendant to make a decision, either granting or denying the application.

## II. Discussion

Shaat's complaint pleads jurisdiction under the mandamus statute, 28 U.S.C.

§ 1361; the federal question statute, 28 U.S.C. § 1331; the Administrative Procedure Act

("APA"), 5 U.S.C. §§ 555(b), 702; and the Immigration and Nationality Act ("INA"), 8

U.S.C. §§ 1101 *et seq.*, along with its implementing regulations. The government moves

to dismiss under Federal Rule of Civil Procedure 12(b)(1), contending that the court lacks

subject matter jurisdiction. *See* Motion of Defendant Evangelia Klapakis to Dismiss

(Docket No. 4). Because the government's motion to dismiss attacks the complaint on its

face rather than by disputing the factual basis for subject matter jurisdiction, the court

considers the complaint's allegations to be true for the purposes of ruling on the motion.

*See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006).[2]

This court has "original jurisdiction of any action in the nature of mandamus to

compel an officer or employee of the United States or any agency thereof to perform a

---

[2] Shaat has not responded in opposition to the government's motion. Under the
local rules of this district, the court is therefore permitted to treat the government's
motion as uncontested and dismiss the case. *See* E.D. Pa. R. 7.1(c) (providing, with
exceptions not applicable here, that "any party opposing [a] motion shall serve a brief in
opposition . . . within fourteen (14) days after service of the motion and supporting brief"
and that "[i]n the absence of a timely response, the motion may be granted as
uncontested"); *United States v. Eleven Vehicles*, 200 F.3d 203, 214 (3d Cir. 2000) ("[I]t is
not an abuse of discretion for a district court to impose a harsh result, such as dismissing a
motion . . . , when a litigant fails to strictly comply with the terms of a local rule."). The
court notes that this is not the first case in which Shaat's counsel has not responded to a
motion to dismiss. *See Song v. Klapakas* [sic], No. 06-05589, 2007 WL 1101283, at *1
(E.D. Pa. Apr. 12, 2007). The court declines to dismiss the case on this ground, however,
because the court's own research, supplementing the government's submission, has
seemed sufficient to ground a solution of the jurisdictional question.

duty owed to the plaintiff."  28 U.S.C. § 1361.  "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear non-discretionary duty."  *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).  The duty owed by the defendant must be "a specific, plain ministerial act," "positively commanded and so plainly prescribed as to be free from doubt."  *Harmon Cove Condo. Ass'n v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987).  "[M]andamus may issue to require the exercise of permissible discretion, although the manner in which the discretionary act is to be performed is not to be directed by the court."  *Pennsylvania ex rel. Sheppard v. Nat'l Ass'n of Flood Insurers*, 520 F.2d 11, 27 (3d Cir. 1975), *overruled in part on other grounds by Pennsylvania v. Porter*, 659 F.2d 306 (3d Cir. 1981).

The Seventh Circuit has noted the necessity of "distinguish[ing] between the court's power to adjudicate the [mandamus] petition and the court's authority to grant relief."  *Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 386 (7th Cir. 2003).  The court clarified that "[i]n resolving whether section 1361 jurisdiction is present, allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction."  *Id.* (quoting *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981)); *see also id.* (noting that "the usual standards" of *Bell v. Hood*, 327 U.S. 678 (1946), apply).  Therefore, "'[f]or jurisdictional purposes it is not necessary that the duty [owed to the

plaintiff] be clear before the analysis begins; in other words, we take jurisdiction to determine whether there is a duty owed.'"  *Id.*  (quoting *Coal Operators & Assoc., Inc. v. Babbitt*, 291 F.3d 912 (6th Cir. 2002)); *accord Michael v. Lullo*, 173 F.3d 503, 505 n.3 (4th Cir. 1999) ("'If the complaint states nonfrivolous allegations of the existence of the essential elements supporting a mandamus action, jurisdiction is established and a trial court must determine a remedy vel non on the merits.'" (quoting *First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988))); *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) ("The requirement that a duty be 'clearly defined' to warrant issuance of a writ does not rule out mandamus actions in situations where the interpretation of the controlling statute is in doubt.").

The APA provides that a court "shall . . . compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); *see also id.* § 555(b) (providing that "within a reasonable time, each agency shall proceed to conclude a matter presented to it").  Although "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action," if a plaintiff states an APA claim under § 706(1), an independent ground for jurisdiction exists under the federal question statute, 28 U.S.C. § 1331, "subject only to preclusion-of-review statutes created or retained by Congress."  *Califano v. Sanders*, 430 U.S. 99, 107 & n.7 (1977); *see* 28 U.S.C. § 1331.

In *Norton v. South Utah Wilderness Alliance*, 542 U.S. 55 (2004), the Supreme

Court held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id*. at 64 (emphases in original). That is, "§ 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act." *Id*. (internal quotation marks omitted; emphasis in original). The Court noted that the APA thus "carried forward the traditional practice" with regard to writs of mandamus: "The mandamus remedy was normally limited to enforcement of a specific, unequivocal command, the ordering of a precise, definite act about which an official had no discretion whatever." *Id*. at 63 (citations, internal quotation marks, and alterations omitted).

The agency action at issue in this case is the processing of an application for naturalization. The agency's regulations provide that "[s]ubsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant." 8 C.F.R. § 335.1. Following an examination of the applicant, *see id*. § 335.2, "[t]he Service officer shall grant the application if the applicant has complied with all requirements for naturalization." *Id*. § 335.3(a). Once a decision is made, "[t]he applicant shall be notified that the application has been granted or denied . . . ." *Id*.

The government contends in the memorandum in support of its motion that this court does not have jurisdiction under either the mandamus statute or the APA because the INA and its implementing regulations do not create a duty in the agency to adjudicate

6

an application for naturalization within any particular period of time.  Therefore, the government argues, there is no "specific, unequivocal command" for this court to enforce by a writ of mandamus or under the APA.  *Norton*, 542 U.S. at 63.[3]

Although there may be no particular statutory deadline presently applicable to the processing of Shaat's application, the agency has no discretion over *whether* to render a decision on the application.  The agency's regulations unequivocally and specifically command the agency to adjudicate naturalization applications: The agency "shall conduct an investigation," "shall grant the application if the applicant has complied with all requirements," and "shall" notify the applicant of the agency's decision.  8 C.F.R. §§ 335.1, 335.3(a).[4]

Primarily on the basis of these regulations, the majority of courts in this district and elsewhere to have considered the question have held that the agency does have a non-discretionary duty to adjudicate applications for naturalization, despite the lack of a statutory deadline.  *See Sharawneh v. Gonzales*, No. 07-683, 2007 WL 2684250, at *3-4 (E.D. Pa. Sept. 10, 2007); *Villico v. Monica*, No. 07-2218, 2007 WL 2597344, at *1 (E.D.

---

[3] In a supplementary memorandum in support of its motion to dismiss, the government also offers various policy-based arguments against court-imposed deadlines for the processing of naturalization applications.  *See* Docket No. 11.  The court finds these arguments irrelevant to whether the court has jurisdiction to hear this case.

[4] The regulations do provide for a deadline once the applicant's initial examination has taken place.  *See* 8 C.F.R. § 335.3(a) (providing that, in the absence of exceptional circumstances, "[t]he decision to grant or deny the application shall be made at the time of the initial examination or within 120-days [thereafter]").  Because Shaat has not yet undergone her initial examination, this deadline has not yet been triggered.

Pa. Sept. 4, 2007); *Elhaouat v. Mueller*, No. 07-632, 2007 WL 2332488, at *4 (E.D. Pa.

Aug. 9, 2007); *Ajmal v. Mueller*, No. 07-206, 2007 WL 2071873, at *2 (E.D. Pa. July 17,

2007); *Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 399-400 (E.D. Pa. 2007) (holding same,

collecting cases, and rejecting proposition that CIS possesses "unfettered discretion to

relegate aliens to a state of limbo, leaving them to languish there indefinitely" (quoting

*Kim v. Ashcroft*, 340 F. Supp.2d 384, 393 (S.D.N.Y. 2004))); *Alkenani v. Barrows*, 356 F.

Supp. 2d 652, 657 (N.D. Tex. 2005) (holding same). *Cf. Damra v. Chertoff*, No. 05-0929,

2006 WL 1786246, at *3 (N.D. Ohio June 23, 2006) (noting that "[i]t is well recognized

that immigration officials have a duty to process naturalization applications within a

reasonable time frame" but holding that court lacked jurisdiction under 8 U.S.C.

§ 1447(b), a provision not at issue in this case).

The government cites in its memorandum to the court a single case squarely in

support of its position, *Badier v. Gonzales*, 475 F. Supp. 2d 1294 (N.D. Ga. 2006), and

has also in a subsequent letter brought to the court's attention a second such decision,

*Ahmed v. Mueller*, No. 06-5625, Docket No. 7 (E.D. Pa. Sept. 14, 2007) (hereinafter

"*Ahmed* Order").  On similar facts, the court in *Badier* held that CIS had no discrete duty

to act because it was not constrained by any "statutorily established time period" for

processing a naturalization application.  475 F. Supp. 2d at 1247.  As another court in this

district has noted, "*Badier*'s analysis would make it permissible for an agency to never act

so long as there was no 'statutorily prescribed time frame' for it to do so," a "result [that]

makes little sense in light of 5 U.S.C. § 555(b), which requires agencies to act within a 'reasonable time' on matters presented to it." *Elhaouat*, 2007 WL 2332488, at *4 n.9 (quoting *Badier*, 475 F. Supp. 2d at 1247).  The force of this objection to *Badier*'s holding remains true whether or not proceedings under the INA are governed by the APA, *cf. infra* n.6, because, given the agency's duty to adjudicate applications, "by necessary implication the adjudication must occur within a reasonable time": "A contrary position would permit the INS to delay indefinitely.  Congress could not have intended to authorize potentially interminable delays." *Agbemaple v. INS*, No. 97-8547, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998); *accord Xin Liu v. Chertoff*, No. 06-2808, 2007 WL 2433337, at *3 n.6 (E.D. Cal. Aug. 22, 2007); *Yu v. Brown*, 36 F. Supp. 2d 922, 932 (D.N.M. 1999).  The court therefore does not find *Badier* persuasive.

The court is also not persuaded by *Ahmed* that the court lacks jurisdiction to consider Shaat's petition.  In *Ahmed*, the court held that it lacked jurisdiction over a similar mandamus petition because CIS "does not have a non-discretionary duty to conduct an interview of applicant when the FBI has not yet completed his background check since the regulations allow an interview to be scheduled only *after* the criminal background check is complete." *Ahmed* Order at 9 (emphasis in original).  The court noted that "Congress has prohibited [CIS] from processing applications until it receives a completed FBI background check." *Id*. (citing *Kaplan*, 481 F. Supp. 2d at 379 (citing

9

Pub. L. No. 105-119, 111 Stat. 2448 (Nov. 26, 1997))).[5]  The court finds that the statute

cited in *Ahmed* and *Kaplan* does indeed raise a doubt about whether CIS presently has a

duty to take some action with regard to Shaat's application.  However, the court agrees

with *Kaplan*'s holding that "[w]hether the delay is attributable to the FBI or CIS is a

factual matter" going to the merits of the petition rather than the court's jurisdiction.  481

F. Supp. 2d at 402; *see id*. (noting that although "courts have routinely found CIS delays

caused by FBI background checks to be justifiable delays," "courts have not hesitated to

find the CIS has unreasonably delayed processing of an application where the facts show

the delay is fairly attributable to CIS and not the FBI").[6]

Because CIS has a duty to adjudicate naturalization applications that is "positively

commanded and so plainly prescribed as to be free from doubt," *Harmon Cove*, 815 F.2d

at 951, and because the court finds that Shaat's complaint otherwise "states nonfrivolous

allegations of the existence of the essential elements supporting a mandamus action,"

*Michael*, 173 F.3d at 505 n.3, the court holds that Shaat's complaint establishes

---

[5] That law provides without further elaboration: "[D]uring fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997 . . . ."  Pub. L. No. 105-119, 111 Stat. 2448-49 (Nov. 26, 1997).

[6] The court also notes that in *Ahmed*, the petitioner did not allege in his complaint, as Shaat has alleged here, that CIS is capable of expediting an FBI criminal background check.  *See Ahmed v. Mueller*, No. 06-5625, Docket No. 1 (E.D. Pa. Jan. 31, 2007).

jurisdiction under the mandamus statute, 28 U.S.C. § 1361.  *See Sharawneh*, 2007 WL
2684250, at \*4 (finding mandamus jurisdiction to compel adjudication of naturalization
application).  *Cf. Rios v. Ziglar*, 398 F.3d 1201, 1206-07 (10th Cir. 2005) (holding on
analogous grounds that district court had mandamus jurisdiction over petition to compel
decision on application for adjustment of status); *Song v. Klapakas* [sic], No. 06-05589,
2007 WL 1101283, at \*3 (E.D. Pa. Apr. 12, 2007) (same); *Duan v. Zamberry*, No.
06-1351, 2007 WL 626116, at \*3 (W.D. Pa. Feb. 23, 2007) (same).  The government's
motion to dismiss will therefore be denied.[7]  An appropriate order follows.

---

[7] Because the court finds that it has jurisdiction under the mandamus statute, the
court need not reach the question whether 28 U.S.C. § 1331 in conjunction with the APA
provides a second ground for jurisdiction over this action.  *Cf. Elhaouat*, 2007 WL
2332488, at \*4-5 (finding jurisdiction under 28 U.S.C. § 1331 and the APA).  The court
notes that "'[m]ost of the courts that have addressed the issue agree that, for purposes of
compelling agency action that has been unreasonably delayed, the mandamus statute and
the APA are co-extensive.'"  *Sharawneh*, 2007 WL 2684250, at \*3 (quoting *Cao v.
Upchurch*, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007) and collecting cases); *see Ajmal*,
2007 WL 2071873, at \*2 n.2; *Sze v. INS*, No. 97-0569, 1997 WL 446236, at \*4 (N.D. Cal.
July 24, 1997); *Yan v. Mueller*, No. 07-0313, 2007 WL 1521732, at \*8 (S.D. Tex. May
24, 2007).  *But see Lazli v. United States*, No. 05-1680, 2007 WL 496351, at \*4, 8, 15-18
(D. Or. Feb. 12, 2007) (granting mandamus relief to compel CIS to adjudicate
naturalization application after noting uncertainty over whether the APA governs
proceedings under the INA); *Ardestani v. INS*, 502 U.S. 129, 133-34 (1991) (holding that
APA fees provision did not govern in deportation proceedings because Congress intended
the INA to supplant rather than supplement the APA).

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| AIDA Y. SHAAT,<br><br>                    Plaintiff<br><br>    v.<br><br>EVANGELIA A. KLAPAKIS,<br><br>                        Defendant | CIVIL ACTION<br><br>No. 06-5625 |

**ORDER**

    **AND NOW**, this 21st day of September, 2007, upon consideration of the motion

to dismiss filed by defendant Klapakis, *see* Docket No. 4, and for the reasons stated in the

accompanying opinion, it is **ORDERED** that the motion to dismiss is **DENIED.**

                                    BY THE COURT:

                                    /s/ Louis H. Pollak
                                    _____
                                    Pollak, J.

12